# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JAMES EASON, EASON HERITAGE LLC, CHRISTOPHER EASON, HEATHER EASON, HEATHER ELIZABETH DESIGNS, LLC, d/b/a Z&CO DESIGN GROUP, PARAGON DESIGNER SERVICES, LLC,

          Plaintiffs,

      v.

TRUIST BANK,

          Defendant.

Case No. 1:24-cv-04155-MHC

Hon. Mark H. Cohen

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

PARKER, HUDSON, RAINER & DOBBS LLP
David A. O'Neal (No. 342071)
303 Peachtree Street N.E., Suite 3600
Atlanta, GA 30308
Telephone: (404) 880-4755
Facsimile: (404) 522-8409
doneal@phrd.com

WILLIAMS & CONNOLLY LLP
Enu A. Mainigi*
Craig D. Singer*
Steven M. Pyser*
William D. Ferraro*
Eric J. Tucker*
*Pro hac vice
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
csinger@wc.com
spyser@wc.com
wferraro@wc.com
etucker@wc.com

*Attorneys for Defendant Truist Bank*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

LEGAL STANDARD...........................................................................3

ARGUMENT ......................................................................................4

I.      The Receivership Order Bars This Action. ...............................4

II.     The Complaint Fails to State a Claim upon Which Relief Can Be
        Granted...............................................................................6

        A.      The Complaint Does Not Plausibly Allege that Truist
                "Knowingly Participated in Fraud," Much Less With
                Particularity (Count I). ..............................................6

        B.      The Complaint Fails to State a Claim for Unjust Enrichment
                (Count II)...................................................................14

        C.      The Complaint Fails to State a Claim for Negligence
                (Count III)..................................................................17

CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Agapitos v. PCM Inv. Co.*,
  809 F. Supp. 939 (M.D. Ga. 1992) ..................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................3

*Beranger v. Harris*, No. 1:18-CV-5054-CAP,
  2021 WL 4254940 (N.D. Ga. Feb. 12, 2021) ....................................................15

*Bowden v. Med. Ctr., Inc.*,
  845 S.E.2d 555 (Ga. 2020) ................................................................................7

*Burley v. Drive Planning, LLC*, No. 29D01-2408-PL-009063
  (Hamilton Cnty. (Ind.) Super. Ct. Oct. 14, 2024)..............................................5

*Chaney v. Dreyfus Serv. Corp.*,
  595 F.3d 219 (5th Cir. 2010) .......................................................................21, 22

*Chang v. JP Morgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) ....................................................................21, 22

*Cline v. Advanced Neuromodulation Sys., Inc.*,
  17 F. Supp. 3d 1275 (N.D. Ga. 2014)..........................................................7, 8, 9

*Durham Com. Cap. Corp. v. Liriano*, No. 1:19-CV-0900-LMM,
  2019 WL 13207588 (N.D. Ga. Aug. 26, 2019)...........................................7, 8, 9

*Eisenberg v. Wachovia Bank, N.A.*,
  301 F.3d 220 (4th Cir. 2002) ...........................................................................18

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
  722 F. Supp. 2d 875 (W.D. Mich. 2010) ..........................................................11

*Embry Dev. Co. v. Drive Planning, LLC*, No. 2023cv384406
  (Fulton Cnty. (Ga.) Super. Ct. Sept. 30, 2024)...................................................5

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ..........................................................................8

*GSR Mkts. Ltd. v. McDonald*,
  593 F. Supp. 3d 1208 (N.D. Ga. 2022) (*GSR I*) ......................................7, 18, 19

*GSR Mkts. Ltd. v. McDonald*, No. 23-11222, 2024 WL 3311315
  (11th Cir. July 5, 2024) (*GSR II*) ................................................................19, 20

*Hare Krishna Roswell Hotel, LLC v. Corsino*,
  892 S.E.2d 785 (Ga. Ct. App. 2023) ...................................................................18

*Heinert v. Bank of Am., N.A.*,
  410 F. Supp. 3d 544 (W.D.N.Y. 2019) ..........................................................10, 13

*Hofschutle v. SunTrust Banks, Inc.*, No. 1:20-cv-01676-WMR,
  2021 WL 5230732 (N.D. Ga. Mar. 4, 2021) ...............................................18, 19

*In re Agape Litigation*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..........................................................12, 13

*In re TelexFree Sec. Litig.*,
  357 F. Supp. 3d 70 (D. Mass. 2019) ..............................................................10, 17

*Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771-
  MARTINEZ, 2017 WL 5514370 (S.D. Fla. Nov. 15, 2017) ..............................14

*Lawrence v. Bank of Am., N.A.*,
  455 F. App'x 904 (11th Cir. 2012) ......................................................................12

*Liberte Cap. Grp., LLC v. Capwill*,
  462 F.3d 543 (6th Cir. 2006) ...............................................................................6

*Lilliston v. Regions Bank*,
  653 S.E.2d 306 (Ga. Ct. App. 2007) ...................................................................19

*Maloney v. Tallulah River Co.*, No. 2:20-CV-0191-SCJ,
  2021 WL 9763366 (N.D. Ga. Aug. 26, 2021) ...................................................6, 7

*Marshall v. Nat'l Bank of Middlebury*, No. 5:19-cv-246,
  2021 WL 6803284 (D. Vt. Dec. 3, 2021) ...........................................................11

*Midwest Feeders, Inc. v. Regions Bank (Inc.) (Ala.)*, No. 1:15-
  CV-00013 (LJA), 2016 WL 5796894 (M.D. Ga. Sept. 30,
  2016) ....................................................................................................................18

iii

*Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*,
   541 F. Supp. 2d 745 (D. Md. 2008) ...................................................................19

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Raczkowski*,
   764 F.3d 800 (8th Cir. 2014) ......................................................................18, 19

*O'Dell v. Berkshire Bank*, No. 5:24-CV-652, 2024 WL 4635262
   (N.D.N.Y. Oct. 31, 2024) ...........................................................................12, 13

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
   32 F.4th 1298 (11th Cir. 2022) ........................................................................15

*Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat'l Ass'n*, No. 15-
   2092(DSD/TNL), 2015 WL 4744528 (D. Minn. Aug. 11,
   2015) .........................................................................................................16, 17

*Rommelman v. Hoyt*,
   670 S.E.2d 808 (Ga. Ct. App. 2008) ................................................................16

*SEC v. Adams*, No. 3:18-cv-252-CWR-FKB,
   2019 WL 3996401 (S.D. Miss. Mar. 13, 2019) ...................................................6

*SEC v. Alleca*, No. 1:12-CV-3261,
   2015 WL 999888 (N.D. Ga. Mar. 5, 2015) .........................................................5

*SEC v. Detroit Mem'l Partners, LLC*, No. 1:13-CV-1817-WSD,
   2016 WL 3951336 (N.D. Ga. Feb. 11, 2016) ......................................................6

*SEC v. Drive Planning, LLC*, No. 1:24-cv-03583-VMC (N.D.
   Ga.) (Calvert, J.), Dkt. 1 .......................................................................1, 2, 8, 16

*Speedway Motorsports, Inc. v. Pinnacle Bank*,
   727 S.E.2d 151 (Ga. Ct. App. 2012)................................................................17

*Stern v. Charles Schwab & Co.*, No. CV–09–1229–PHX–DGC,
   2010 WL 1250732 (D. Ariz. Mar. 24, 2010)..............................................11, 12

*Tidikis v. Network for Med. Commc'ns. & Rsch., LLC*,
   619 S.E.2d 481 (Ga. Ct. App. 2005)...........................................................15, 16

*Tolson Firm, LLC v. Sistruck*, 789 S.E.2d 265 (Ga Ct. App.
   2016) .................................................................................................................15

*Trusted Data Sols., LLC v. Kotchen & Low, LLP*, No. 1:14-cv-
  1419-TCB, 2015 WL 11251959 (N.D. Ga. Feb. 6, 2015)...................................16

*Turner v. Jordan*,
  117 F.4th 1289 (11th Cir. 2024) ...........................................................................1

*VIP Mortg. Corp. v. Bank of Am., N.A.*,
  769 F. Supp. 2d 20 (D. Mass. 2011)....................................................................19

*Wachovia Ins. Servs., Inc. v. Fallon*,
  682 S.E.2d 657 (Ga. Ct. App. 2009)..............................................................15, 16

*WESI, LLC v. Compass Env't, Inc.*,
  509 F. Supp. 2d 1353 (N.D. Ga. 2007)..........................................................7, 8, 9

*Wiand v. Wells Fargo Bank, N.A.*,
  86 F. Supp. 3d 1316 (M.D. Fla. 2015)................................................................17

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fla. 2013)..............................................................11

*Woodruff v. Bank of Am., N.A.*, No. 1:18-CV-3556-MHC,
  2018 WL 11461338 (N.D. Ga. Dec. 4, 2018) .......................................17, 18, 20

*Zayed v. Associated Bank, N.A.*,
  913 F.3d 709 (8th Cir. 2019) ..............................................................................11

## OTHER AUTHORITIES

Bank Secrecy Act, 31 U.S.C. § 5311 ......................................................................19

Fed. R. Civ. P. 9 ................................................................................................8, 14

## INTRODUCTION

Russell Todd Burkhalter allegedly used an entity called Drive Planning LLC to run a Ponzi scheme.  He told potential investors that Drive Planning was a real-estate investment business, and he paid their "returns" using funds raised from new investors.  ECF No. 1 (Compl.) ¶¶ 1–2, 28–34.[1]

The Securities and Exchange Commission investigated the scheme and brought an action in this District to halt Drive Planning's activities on August 13, 2024.  *See SEC v. Drive Planning, LLC*, No. 1:24-cv-03583-VMC (N.D. Ga.) (Calvert, J.) (SEC Action), Dkt. 1 (Exhibit 1).  At the SEC's request, the Court in that proceeding appointed a Receiver and barred civil lawsuits brought by anyone other than the Receiver and "involving" Drive Planning or Mr. Burkhalter.  Compl. ¶ 2; *see* SEC Action, Dkt. 10 (Receivership Order) (Exhibit 2).[2]

The Receiver is not a party here.  Rather, Plaintiffs in this putative class action are some of Drive Planning's alleged investors, who now attempt to bring an action "involving" Burkhalter and Drive Planning against a different defendant.  Their chosen target, Defendant Truist Bank, has no connection to the scheme apart from some Drive Planning accounts that were held at the bank.  Compl. ¶¶ 2–3.

---

[1]    Truist takes as true all well-pleaded allegations for purposes of this Motion.

[2]    The Court may take judicial notice of the SEC Action and Receivership Order, which are alleged at least twice in the Complaint.  Compl. ¶¶ 2, 108–10; *see, e.g.*, *Turner v. Jordan*, 117 F.4th 1289, 1298 n.11 (11th Cir. 2024).

Plaintiffs spend dozens of paragraphs recycling SEC allegations about *Drive Planning* and *Burkhalter's* fraudulent scheme, lavish lifestyle, and subsequent investigation.  Compl. ¶¶ 1–3, 28–42, 58–61, 72–110.  Much of this is copied verbatim from the SEC's complaint against Burkhalter and Drive Planning.[3]

By contrast, Plaintiffs have little to say about Truist.  Plaintiffs do *not* allege:

- They have ever been Truist customers.

- They have ever had any relationship with Truist at all.

- They ever communicated with Truist.

- Truist had any intent to induce any Plaintiffs to act or refrain from acting with respect to Burkhalter or Drive Planning.

- Any Truist employees knew that Drive Planning was a Ponzi scheme or that Burkhalter was using Drive Planning to misappropriate investors' funds.

All Plaintiffs say relating to the accounts at Truist is that Drive Planning engaged in a high volume of transactions and that Drive Planning's account activity was different from the expected activity of a real-estate business.  Compl. ¶¶ 5–9.  Based on that theory, Plaintiffs bring Georgia common law causes of action against Truist for "knowing participation" in fraud, unjust enrichment, and negligence.  *Id.* ¶¶ 123–40.

---

[3]    *Compare, e.g.*, SEC Action ¶ 61 ("Rather, Drive Planning's revenue sources were limited to commissions earned on life insurance sales, membership fees (ranging from $2,000 to $5,000) from clients who received financial planning services, and rental income from a few properties.") *with* Compl. ¶ 58 (exact same).

The Court should dismiss Plaintiffs' Complaint with prejudice. First, Plaintiffs' suit is barred by the Receivership Order, which prohibits all private civil proceedings "involving" Burkhalter or Drive Planning—including this case. Second, Plaintiffs' allegations do not state any claim against Truist. There are no allegations that any Plaintiff set foot in any Truist branch or ever communicated with any Truist individuals. Nor do Plaintiffs suggest that Truist wanted to induce any Plaintiff to invest in Drive Planning. And no allegations support the groundless assertion that Truist "knowingly participated" in Burkhalter's alleged Ponzi scheme.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions devoid of further factual enhancement." *Id.* (cleaned up). There must be "well-pleaded factual allegations." *Id.* at 679. And "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* at 678 (quotations omitted).

# ARGUMENT

## I.    The Receivership Order Bars This Action.

The Receivership Order enjoins Plaintiffs from filing and prosecuting this suit, which is a barred "Ancillary Proceeding."   Judge Calvert's Order defines "Ancillary Proceedings" in relevant part to encompass all civil litigation "involving" Drive Planning or its officers:

> ***All civil legal proceedings of any nature***, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature ***involving***: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) ***the Receivership Defendant***, including subsidiaries and partnerships; or, (d) ***the Receivership Defendant's past or present officers***, directors, managers agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (**such proceedings are hereinafter referred to as "Ancillary Proceedings"**).

Receivership Order ¶ 32 (Exhibit 2) (emphasis added).   Paragraphs 33 and 34 proscribe such proceedings:

> 33.  The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

> 34. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.

*Id.* Several other lawsuits have been stayed as a result of this Order.[4]

This case is subject to the Receivership Order because it "involv[es]" Drive Planning and its sole owner, Russell Burkhalter. The term "involving" plainly is "not limited to mean actions brought by or against a Receivership Defendant." *SEC v. Alleca*, No. 1:12-CV-3261, 2015 WL 999888, at *3 (N.D. Ga. Mar. 5, 2015) (interpreting a substantively identical Receivership Order). Plaintiffs themselves highlight Drive Planning and Burkhalter as the only two "Relevant Non-Parties" in the case. Compl. ¶¶ 21–22. They stress that Burkhalter was "the sole owner of Drive Planning and controlled Drive Planning at all relevant times." *Id* ¶ 22. And they discuss Burkhalter or his company on literally every page of the Complaint. Drive Planning and Burkhalter even headline Plaintiffs' alleged common issues of fact and law for class purposes: the very first such issue is "[w]hether Burkhalter and Drive Planning committed fraud." *Id.* ¶ 115(a). Because this lawsuit "involves" Drive Planning and Russell Burkhalter, it is an "Ancillary Proceeding" prohibited by the Receivership Order, and the Court should dismiss it with prejudice now.[5]

---

[4]    *E.g.*, *Embry Dev. Co. v. Drive Planning, LLC*, No. 2023cv384406 (Fulton Cnty. (Ga.) Super. Ct. Sept. 30, 2024); *Burley v. Drive Planning, LLC*, No. 29D01-2408-PL-009063 (Hamilton Cnty. (Ind.) Super. Ct. Oct. 14, 2024).

[5]    Plaintiffs have already violated the Receivership Order by bringing this suit. Before Plaintiffs filed this action, the Order enjoined anyone from "commencing," "continuing," or "taking any action" in connection with an Ancillary Proceeding. Receivership Order ¶ 33. Faced with a substantively identical Receivership Order,

## II.    The Complaint Fails to State a Claim upon Which Relief Can Be Granted.

### A.    The Complaint Does Not Plausibly Allege that Truist "Knowingly Participated in Fraud," Much Less With Particularity (Count I).

Plaintiffs allege that Truist "knowingly participated" in Burkhalter and Drive Planning's fraud.  Compl. ¶¶ 123–28.  Under Georgia law, that amounts to a claim for fraud against Truist.  But Plaintiffs have not even tried to allege the core elements of a fraud claim (nor can they).  Count I should be dismissed for failure to state a claim.

Under Georgia law, "the tort of 'aiding and abetting fraud' does not exist as a basis for liability."  *Maloney v. Tallulah River Co.*, No. 2:20-CV-0191-SCJ, 2021

---

at least one court in the Northern District of Georgia has held attorneys in contempt for prosecuting an enjoined Ancillary Proceeding.  *See SEC v. Detroit Mem'l Partners, LLC*, No. 1:13-CV-1817-WSD, 2016 WL 3951336, at *2–3, 9–10 (N.D. Ga. Feb. 11, 2016) (requiring sanctioned attorneys to pay opponent's legal fees). Courts elsewhere have done the same where, as here, the enjoined action was pursued against a third party to the Ponzi scheme, not against an entity in receivership.  *See, e.g.*, *SEC v. Adams*, No. 3:18-cv-252-CWR-FKB, 2019 WL 3996401, at *4 (S.D. Miss. Mar. 13, 2019) (entering order of contempt against investment managers who lost money in Ponzi scheme for violating Receivership Order by reaching settlement with third party, despite acknowledging that sanctioned investment managers "are understandably anxious to recoup the money they have lost through this Ponzi scheme"); *see also Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) ("Intentional interference with a receivership in contravention of a district court's blanket stay is punishable by contempt.").

Truist informed Plaintiffs' counsel of the Receivership Order before filing this Motion, but they declined to withdraw the Complaint.  Truist reserves all rights with respect to the violation of the Order.

WL 9763366, at *7 (N.D. Ga. Aug. 26, 2021) (quoting *Siavage v. Gandy*, 829 S.E.2d 787, 790 (Ga. Ct. App. 2019)).  Instead, "one who knowingly participates in a fraud may be held liable for the fraud." *Id.* (quoting *Siavage*, 829 S.E.2d at 790); *see also GSR Mkts. Ltd. v. McDonald*, 593 F. Supp. 3d 1208, 1231 (N.D. Ga. 2022) (*GSR I*), *aff'd per curiam*, 2024 WL 3311315 (11th Cir. July 5, 2024) (*GSR II*).  As to this count of the Complaint, then, "the issue becomes: whether Plaintiffs have stated a valid fraud claim against" Truist.  *Maloney*, 2021 WL 9763366, at *7 (citing *Siavage*, 829 S.E.2d at 790); *see also Durham Com. Cap. Corp. v. Liriano*, No. 1:19-CV-0900-LMM, 2019 WL 13207588, at *5 (N.D. Ga. Aug. 26, 2019) (same).

"In order to prove fraud in Georgia, the plaintiff must establish five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1287 (N.D. Ga. 2014) (quoting *Summit Auto. Grp., LLC v. Clark*, 681 S.E.2d 681, 686 (Ga. Ct. App. 2009)) (alteration adopted); *see also Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 563 n.10 (Ga. 2020) (same).  Scienter is also known as "knowledge of falsity": it "is an essential element in a cause of action for deceit based upon fraud." *WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1359 (N.D. Ga. 2007) (quoting *Hertz Corp. v. Cox*, 430 F.2d 1365, 1375 (5th Cir. 1970)).

That means Plaintiffs' Complaint must be dismissed if it fails to allege actual knowledge of fraud.  *See id.*

And because Plaintiffs allege fraud, the facts supporting these allegations must be stated "with particularity" to withstand a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  *See Cline*, 17 F. Supp. 3d at 1287–88.  This standard is significantly stricter—it intentionally "imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff."  *WESI*, 509 F. Supp. 2d at 1358 (quotations omitted).   So to clear this high bar, Plaintiffs must plead "the time, place and contents of false representations," identify who made them, and explain "what was obtained or given up thereby."  *Id.* (quotations omitted).  In other words, they must allege "the who, what, when, where, and how: the first paragraph of any newspaper story."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted).  They do not come close.

**1.  Plaintiffs do not allege any false representations by Truist on which Plaintiffs justifiably relied.**  The Complaint does not allege a single representation by Truist, much less any false representation upon which Plaintiffs relied.  Instead, Plaintiffs allege false representations only by *Burkhalter* and *Drive Planning*: "Burkhalter and Drive Planning perpetrated a fraud upon Plaintiffs and class members through materially false and misleading statements and omissions that

8

misled Plaintiffs and class members to believe they were investing in a legitimate investment." Compl. ¶ 124. Plaintiffs do not even try to allege similar representations by, or reliance upon, Truist. Nor do they claim that Truist somehow "participated" with Burkhalter and Drive Planning in making any false statements. This deficiency alone warrants dismissal. *See Cline*, 17 F. Supp. 3d at 1288.

**2. Plaintiffs do not allege Truist had any intention to induce Plaintiffs to do anything.** This pleading deficiency is also enough—on its own—to dismiss Count I. For instance, in *Durham Commercial Capital Corp. v. Liriano*, 2019 WL 13207588 (N.D. Ga. Aug. 26, 2019), Judge May construed a claim for "aiding and abetting fraud" as one for "knowing participation in a fraud," and therefore addressed whether the plaintiff had "adequately set forth the elements of a fraud claim." *Id.* at \*5 (cleaned up). She granted defendants' motion to dismiss for failure to allege any intent to induce: "Plaintiff has alleged no facts to support that Defendants intended to induce Plaintiff's reliance on their misrepresentations." *Id.* at \*6. The same reasoning and outcome apply here.

**3. Plaintiffs allege no facts showing Truist had actual knowledge of the fraud.** To state a claim for fraud and adequately allege scienter, Plaintiffs must allege that Truist had "actual knowledge" of the fraud. *WESI*, 509 F. Supp. 2d at 1359 (quoting *Hertz Corp.*, 430 F.2d at 1375). Plaintiffs recognize this requirement, noting that a common class issue is "[w]hether Truist had actual knowledge of the

fraud." Compl. ¶ 115(b). But Plaintiffs only offer conclusory claims that a bank like Truist *should have* known about the Ponzi scheme. Truist disputes this, but in any event, that is not the standard: "The fact that a bank *should have* recognized fraud does not mean that it had *actual knowledge* of fraud." *In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 70, 77 (D. Mass. 2019) (citation omitted).

Measured against the actual-knowledge standard, none of Plaintiffs' assertions suffices to plead that Truist actually knew of the Drive Planning fraud. Plaintiffs argue that "[f]rom a bank's perspective, the fraudulent scheme was obvious." Compl. ¶ 4. They emphasize "the amount of funds and volume of transactions" associated with the Drive Planning account, *id.* ¶ 5; they say that Truist "saw" account activity "blatantly at odds with Drive Planning's claimed business model," *id.* ¶ 54; and they point to Truist's "Know Your Customer" compliance obligations, including that Truist "must . . . take appropriate action once put on notice of any of a series of money laundering indicia," *id.* ¶¶ 51–52.

But a mountain of case law demonstrates that none of this amounts to "actual knowledge" on the part of Truist. Courts routinely hold that even "a veritable forest of red flags" is "insufficient to impute actual knowledge" of a Ponzi scheme to a defendant bank. *Heinert v. Bank of Am., N.A.*, 410 F. Supp. 3d 544, 549–50 (W.D.N.Y. 2019), *aff'd*, 835 F. App'x 627, 630–31 (2d Cir. 2020) (cleaned up). That is because allegations that a bank missed the "alarm bells" of a Ponzi scheme—the

gist of Plaintiffs' action against Truist—"do not satisfy the heightened standard of pleading actual knowledge of fraud." *Marshall v. Nat'l Bank of Middlebury*, No. 5:19-cv-246, 2021 WL 6803284, at *7 (D. Vt. Dec. 3, 2021), *report and recommendation adopted*, 2022 WL 1567445 (D. Vt. May 18, 2022). As one federal court in Florida summed up: "Plaintiffs alleging aiding-and-abetting liability for a bank's participation in a Ponzi scheme sometimes rely on 'red flags' or procedural infirmities that should have alerted the bank to potentially unscrupulous activity by its customer"—just as Plaintiffs do here—but these allegations "are insufficient" because they "do not create a strong inference of actual knowledge of wrongdoing." *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244–45 (M.D. Fla. 2013) (quotations omitted).[6]

As for Plaintiffs' claims about transaction volume, courts have dismissed fraud claims against banks predicated on identical allegations. For example, the court in *Stern v. Charles Schwab & Co.*, No. CV–09–1229–PHX–DGC, 2010 WL

---

[6]    The out-of-state cases cited in this section all granted motions to dismiss against defendant banks for failures to adequately plead "actual knowledge" of Ponzi schemes. The case law at the summary judgment stage is equally fatal to Plaintiffs. *See Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715–16 (8th Cir. 2019) (granting summary judgment for bank for lack of knowledge of Ponzi scheme despite "sloppy banking" and "'red flags' that, with the benefit of hindsight, should have prompted further investigation or inquiry"); *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 920 (W.D. Mich. 2010) (granting summary judgment for bank for lack of actual knowledge of fraud despite "concatenation of 'red flags,' suspicious circumstances, and other irregularities").

1250732 (D. Ariz. Mar. 24, 2010), held that plaintiffs failed to allege actual knowledge of a Ponzi scheme even though the defendant bank "knew of unusual, unprecedented, and unexplained levels of activity in the [wrongdoers'] account" and therefore "had good reason to be suspicious." *Id.* at *9–10. Likewise, the Eleventh Circuit affirmed a dismissal under Florida law despite allegations that the perpetrator of the Ponzi scheme engaged in "atypical business transactions" that included "exceptionally large deposits" at the defendant bank. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 905–07 (11th Cir. 2012). And a New York court recently granted a bank's motion to dismiss for lack of alleged "actual knowledge" even though the Ponzi scheme had been run out of "the largest and most transactionally active account at" the bank. *O'Dell v. Berkshire Bank*, No. 5:24-CV-652, 2024 WL 4635262, at *3–4 (N.D.N.Y. Oct. 31, 2024); *see also Agapitos v. PCM Inv. Co.*, 809 F. Supp. 939, 949–50 (M.D. Ga. 1992) (defendant who "took a more active role in facilitating the transactions" of alleged fraudster still lacked "actual knowledge" of fraud).

The same goes for Plaintiffs' claim that Drive Planning's account activity was "at odds with Drive Planning's claimed business model." Compl. ¶ 54. This, too, is insufficient to infer actual knowledge by Truist. For instance, the plaintiffs in *In re Agape Litigation*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011), alleged that the defendant bank had a "close business relationship" with the accountholder running the Ponzi

scheme, that the account activity was "inconsistent with" the accountholder's "representations about operating a bridge loan business," and that bank employees "actually saw this account activity." *Id.* at 310–13. Despite allegations far in excess of those here, the court granted the bank's motion to dismiss, even as it observed that "hindsight may suggest that the fraud was obvious." *Id.* at 310. More recently, the court in *Heinert* dismissed a fraud claim for lack of actual knowledge despite allegations of "frequent atypical transactions and suspicious activity" and even an internal investigation by the bank into a "pattern of unusual transactions." *Heinert*, 410 F. Supp. 3d at 549.

Finally, Plaintiffs' claim that Truist's "actual knowledge" somehow flows from its general regulatory obligations is the exact type of allegation courts routinely reject. In *O'Dell*, for instance, the plaintiff similarly claimed that the defendant bank "had 'know your customer' requirements and Anti-Money Laundering ('AML') obligations" that required "a heightened degree of diligence and scrutiny into high volume clients." 2024 WL 4635262, at *3. The court's conclusion there applies equally to Plaintiffs' allegations here: "While plaintiff has alleged in general terms that [the bank] had numerous internal controls, legal obligations, and oversight mechanisms in place to detect and impede fraudulent activity, plaintiff has not plausibly alleged non-conclusory facts . . . that defendant possessed actual knowledge or fraudulent intent." *Id.* A Florida court granted a bank's motion to

13

dismiss despite "regulatory" allegations far beyond those mustered by Plaintiffs here: The bank's "internal anti-money laundering controls" had allegedly "detected suspicious activity on the accounts" in question, and the bank had even made an internal note of "fraud on account." *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771-MARTINEZ, 2017 WL 5514370, at *4 (S.D. Fla. Nov. 15, 2017), *aff'd*, 960 F.3d 1296 (11th Cir. 2020). But even that was insufficient to allege that the bank actually knew of the Ponzi scheme. *Id.*

Plaintiffs' claim for "knowing participation in fraud" suffers multiple pleading failures: no alleged representations by Truist (much less false representations); no intention by Truist to induce Plaintiffs' investment; and with no actual knowledge by Truist of the Ponzi scheme, no scienter. Each failure alone is enough to dismiss this cause of action.

## B. The Complaint Fails to State a Claim for Unjust Enrichment (Count II).

Plaintiffs next allege that Truist was unjustly enriched by providing banking services. Compl. ¶¶ 129–33. But unjust enrichment is not an independent tort under Georgia law, and Plaintiffs do not (and cannot) plead unjust enrichment as an alternative remedy for a failed contract—the only basis recognized under Georgia law. Nor do they plausibly plead that Truist received any *direct* benefits from *Plaintiffs*, let alone any that unjustly enriched Truist. Plaintiffs' unjust enrichment claim therefore fails under any pleading standard—much less Rule 9(b)'s heightened

standard, which applies because Plaintiffs' claim sounds in fraud. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022); *Beranger v. Harris*, No. 1:18-CV-5054-CAP, 2021 WL 4254940, at *5 (N.D. Ga. Feb. 12, 2021) (collecting cases).

In Georgia, "[a] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009) (quoting *Tidikis v. Network for Med. Commc'ns. & Rsch., LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005)). For that reason, courts in Georgia routinely dismiss unjust enrichment claims that, as here, are pleaded as standalone tort claims. *See, e.g.*, *id.*

For example, in *Tolson Firm, LLC v. Sistrunk*, a law firm brought an unjust enrichment claim against an associate who left the firm and brought former firm clients to her new practice. 789 S.E.2d 265, 267–68 (Ga. Ct. App. 2016). According to the firm, the associate had been unjustly enriched by overhead and advertising expenses the firm had paid to secure the clients. *Id.* at 271. The Georgia Court of Appeals rejected the firm's claim because the firm had improperly asserted unjust enrichment "as a separate tort and not an alternative theory of recovery for a failed contract." *Id.*; *see also Tidikis*, 619 S.E.2d at 485 ("Tidikis apparently is treating the unjust enrichment claim like a tort—*e.g.*, the defendants violated his legal right to

15

property interests. However, a claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails.").

Plaintiffs have similarly pleaded unjust enrichment as a separate tort claim, not as an alternative theory of recovery for a failed contract claim. They allege that "Plaintiffs and class members conferred benefits upon Truist in the form of deposits from which Truist generated income, including but not limited to interest, transfer fees, service fees, transaction fees and online banking fees," Compl. ¶ 131; and that "it would be inequitable for Truist to retain" these alleged benefits, *id.* ¶ 132. But they do not allege that Truist had a contractual relationship with any Plaintiff. That is fatal under Georgia law. *See Wachovia*, 682 S.E.2d at 665.

Further, a Georgia defendant "can be unjustly enriched only when it receives a direct benefit from the services *provided by the claimant*." *Trusted Data Sols., LLC v. Kotchen & Low, LLP*, No. 1:14-cv-1419-TCB, 2015 WL 11251959, at *7 (N.D. Ga. Feb. 6, 2015) (citing *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000)) (emphasis added). Here, however, Plaintiffs do not plead that Truist "has been conferred a benefit *by the party contending* an unjust enrichment." *Rommelman v. Hoyt*, 670 S.E.2d 808, 810 (Ga. Ct. App. 2008) (emphasis added; citation omitted). At most, their allegations suggest that Truist received interest or fees from *Drive Planning* accounts. "As the transfers were done at the behest of a third party, Plaintiffs must look to the third party for recovery." *Ritchie Cap. Mgmt.,*

16

*L.L.C. v. U.S. Bank Nat'l Ass'n*, No. 15-2092(DSD/TNL), 2015 WL 4744528, at *5 (D. Minn. Aug. 11, 2015) (quoting *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007); *see also TelexFree*, 357 F. Supp. 3d at 75 (holding that Ponzi scheme investors' unjust enrichment claims against defendant banks failed because "it was [the account holder], not the Plaintiffs, which conferred the alleged benefit on the banks").

And even if Plaintiffs had properly pleaded that they gave Truist a direct benefit, they still have failed to explain how any alleged benefit *unjustly* enriched Truist. All their Complaint suggests is that Truist "agreed to provide account services" to Drive Planning, "in exchange for which [Drive Planning] agreed to pay account service fees and interests." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015). In other words, Plaintiffs do not plead that Truist received any benefits "except that to which it was entitled" through the routine banking services it provided. *Speedway Motorsports, Inc. v. Pinnacle Bank*, 727 S.E.2d 151, 324 (Ga. Ct. App. 2012). Without more, Truist "was not unjustly enriched," *id.*, and this Court should dismiss Count II.

### C. The Complaint Fails to State a Claim for Negligence (Count III).

Plaintiffs' negligence count (Count III) also fails to state a claim upon which relief can be granted. In Georgia, a plaintiff asserting a negligence claim must allege that the defendant owed the plaintiff a legal duty of care. *See Woodruff v. Bank of*

*Am., N.A.*, No. 1:18-CV-3556-MHC, 2018 WL 11461338, at *11 (N.D. Ga. Dec. 4, 2018) (Cohen, J.) (citing *Morton v. Horace Mann Ins. Co.*, 639 S.E.2d 352, 355 (Ga. Ct. App. 2006)); *see also Hare Krishna Roswell Hotel, LLC v. Corsino*, 892 S.E.2d 785, 788 (Ga. Ct. App. 2023) (noting that "the threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff" and that "in the absence of a legally cognizable duty, there can be no fault or negligence" (cleaned up)).  Plaintiffs, however, have not alleged that Truist owed them any duty recognized under Georgia law.

Banks "do not owe a duty of care to non-customers in the context of common law tort claims." *GSR I*, 593 F. Supp. 3d at 1230 (quoting *Hofschule v. SunTrust Banks, Inc.*, No. 1:20-cv-01676-WMR, 2021 WL 5230732, at *3 (N.D. Ga. Mar. 4, 2021)).  "[N]umerous jurisdictions," including federal courts in Georgia, have recognized and applied this rule.  *Hofschule*, 2021 WL 5230732, at *3 (collecting cases); *see Midwest Feeders, Inc. v. Regions Bank (Inc.) (Ala.)*, No. 1:15-CV-00013 (LJA), 2016 WL 5796894, at *6 (M.D. Ga. Sept. 30, 2016) ("[W]hile there [wa]s no case law in Georgia or the Eleventh Circuit that directly addresses whether a bank owes a duty to a non-customer, other Circuits have found that a bank owes no duty to a non-customer who alleges a common law tort claim."), *aff'd per curiam*, 707 F. App'x 952 (11th Cir. 2018); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225–27 (4th Cir. 2002) (applying rule under North Carolina law); *Nat'l Union Fire Ins.*

*Co. of Pittsburgh v. Raczkowski*, 764 F.3d 800, 804–06 (8th Cir. 2014) (same for Missouri law); *Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*, 541 F. Supp. 2d 745, 749–50 (D. Md. 2008) (Maryland law); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 26–27 (D. Mass. 2011) (Connecticut law).

Here, Plaintiffs do not allege they were Truist customers. As a result, Truist owed them no legal duty of care, and Plaintiffs' negligence claim fails as a matter of law. *See GSR I*, 593 F. Supp. 3d at 1230–31 ("Because there is no recognized duty of care, there can be no breach.").[7]

Georgia recognizes no exceptions to the rule that banks owe no legal duty of care to non-customers.[8] The Eleventh Circuit confirmed as much last year: it declined to apply an exception because no such exception exists under Georgia law, even in cases where "a bank knows or should have known that a fiduciary relationship exists between a customer and noncustomer, and it has actual

---

[7] Nor could Plaintiffs fashion a duty from federal law. The Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, which requires banks to report certain customer activity to the government, "doe[s] not create a private cause of action permitting *third parties* to sue for violations of the statute." *Hofschutle*, 2021 WL 5230732, at *4 (cleaned up). For that reason, the BSA imposes no legal duty with respect "to persons with whom a bank has no existing customer relationship." *Id.* (collecting cases).

[8] Even when dealing with *customers* in arms-length business transactions, banks' legal duties are limited. *See, e.g.*, *Lilliston v. Regions Bank*, 653 S.E.2d 306, 309 (Ga. Ct. App. 2007) (explaining that Georgia requires a "confidential relationship" to impose a legal duty to disclose, and "no confidential relationship exists between a bank and its customers or others with whom the bank deals").

knowledge of its customer's misappropriation of funds." *GSR II*, 2024 WL 3311315, at *1. The court explained that "the majority [of states] have not" recognized this exception, and it "presume[d] that Georgia courts would adopt the majority view": No such exception exists under Georgia law. *Id.* at *2 (quoting *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358 (11th Cir. 2022)).

*GSR II* is fatal to Plaintiffs' claim. Plaintiffs attempt to allege facts to fit this now-rejected exception: they say Truist owed them a legal duty of care because Truist "knew or should have known" that "[a] fiduciary relationship existed between Burkhalter and Drive Planning on the one hand and investors like Plaintiffs and class members on the other hand," and "Truist had actual knowledge that its account holder, Drive Planning, was misappropriating Plaintiffs' and class members' funds." Compl. ¶¶ 135–38. Because the Eleventh Circuit has held no legal duty exists under Georgia law on this basis, Plaintiffs have not plausibly pleaded that Truist owed them a legal duty of care. *See Woodruff*, 2018 WL11461338, at *11 (dismissing negligence claim against bank because plaintiff could not identify a "Georgia statute or reported Georgia appellate court decision imposing [the asserted] duty on" the bank).

Even if Georgia law recognized this exception to the no-legal-duty rule, for at least two reasons, Plaintiffs' claim still fails on the merits. First, as explained above,

the Complaint contains no concrete allegations that anyone at Truist had any *actual knowledge* of any fraud.  Rather, Plaintiffs have only attempted to allege that Truist *should have known* about the Ponzi scheme.  *See supra* pgs 9–14; Compl. ¶¶ 4–12, 51–54.

That is not enough.  The few jurisdictions that have recognized this exception have stressed that the bank must have, among other things, "actual knowledge of its customer's misappropriation."  *Chang v. JP Morgan Chase Bank, N.A.*, 845 F.3d 1087, 1095 (11th Cir. 2017) (applying Florida law); *see also Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010) (same, applying New York law).

Second, Plaintiffs have not plausibly pleaded that Truist knew or should have known that Burkhalter and Drive Planning had a fiduciary relationship with Plaintiffs.  Even assuming such a relationship exists—Plaintiffs' allegations on this front consist of three conclusory paragraphs, *see* Compl. ¶¶ 40–42—their knowledge allegations fail to stack up against the case law.  In *Chang*, for instance, the defendant bank's vice president "knew about and assisted in" a customer's scheme to misappropriate a non-customer's money in the customer's escrow account—the VP (1) labeled the escrow account without complying with the bank's procedures for doing so, (2) falsely represented the account's balance on bank letterhead, and (3) received $100,000 from the fraudster.  *Chang*, 845 F.3d at 1096–97.  Imputing the VP's actions to the bank, the Eleventh Circuit concluded that the bank also knew

or should have known about the customer's fiduciary relationship with the non-customer. *Id.* at 97.

No analogous facts are alleged here. Instead, Plaintiffs again recycle their contention that Truist's general monitoring practices should have tipped it off to Burkhalter and Plaintiffs' purported fiduciary relationship. Compl. ¶¶ 69–71. But courts have rejected the argument that "'red flags' suggestive of money laundering give rise to an obligation on behalf" of banks like Truist to investigate accounts like Drive Planning's for potential fiduciary relationships with non-customer third parties. *Chaney*, 595 F.3d at 234. And Plaintiffs "have cited no cases suggesting some broad duty for financial institutions to monitor all their accounts for suspicious activity and to investigate that activity upon discovery." *Id.* This Court should "not act to impose such an expansive obligation." *Id.*

Georgia courts do not recognize an exception to the rule that a bank owes no legal duty to a non-customer. And even if a limited exception were recognized, Plaintiffs' allegations still would fail to state a claim. The Court should dismiss Plaintiffs' negligence claim (Count III).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

January 17, 2025

Respectfully submitted,

PARKER, HUDSON, RAINER & DOBBS LLP
David A. O'Neal (No. 342071)
303 Peachtree Street N.E., Suite 3600
Atlanta, GA 30308
Telephone: (404) 880-4755
Facsimile: (404) 522-8409
doneal@phrd.com

WILLIAMS & CONNOLLY LLP
Enu A. Mainigi*
Craig D. Singer*
Steven M. Pyser*
William D. Ferraro*
Eric J. Tucker*
*Pro hac vice
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
csinger@wc.com
spyser@wc.com
wferraro@wc.com
etucker@wc.com

Attorneys *for Defendant Truist Bank*

23

## <u>CERTIFICATION UNDER L.R. 7.1(D)</u>

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14-point font, one of the font selections approved by the Court in N.D. Ga. L.R. 5.1(C).

This 17th day of January, 2025.

/s/  David A. O'Neal
David A. O'Neal
Ga. Bar No. 342071